Good morning, Your Honors. Charles Fleischman appearing for the Plaintiff and Appellant. This is an ERISA case dealing with disability benefits. My client became disabled in 1995 from a mental condition, and she was severely disabled. It was denied by the insurance company. We went to court. The judge granted sua sponte, judgment for summary judgment, judgment to the defendant on a plaintiff's motion for summary judgment. That was appealed, reversed, was remanded back to the court, and eventually the matter was remanded back to the insurance company, planning to determine whether or not in March of 1998 the plaintiff was disabled from a physical cause. This remand did not take place until, I think, and I... $388? What is it? Are you saying $388, a physical cause? Yes. Okay, but you said she became disabled in 1995. Do we have the dates right? She was disabled in 1995. She got two years' worth of benefits after it was remanded back from this court under the mental... Mental disability. That took her to... Well, there was a 180-day elimination period from September 95 to March of 96, two years to March of 98. So I think it was in... It was about 2001. It finally went back for her to... For them to decide whether or not she was disabled from a physical cause in 1998. By that time, she was... In 1998, she was not under the care of a doctor. She had no funds. She was almost living on the street. She had filed a bankruptcy in 1999. Medical records from before, from just around 1998, a little bit before, show that she was... She didn't even have enough money to pay her mortgage. Her house was going to go into foreclosure. What does the insurance policy say about excuse for non-use of a physician as opposed to requiring the use of a physician? It doesn't say anything. Well, you're arguing that, in essence, her inability to pay a medical doctor is an excuse under the contract for her non-consultation with a physician despite what the company required. No. It's a condition of paying the liability. Not exactly. I'm arguing that she was in that position because the company, the insurance company, arbitrarily and capriciously denied her the first two years' worth of benefits. As this Court found... She got the two years. She got that in 2000, in December of 2000. She did not have it in 1998. The argument about the inability to get medical care being the fault of the insurance company troubles me because I know that there are many free clinics and places and emergency rooms that will take indigent people and give them the care that they need. Now, maybe not on a regular basis, but if she did have this very debilitating condition, she certainly could have visited some of these clinics. I don't know exactly what the requirements are to go to these clinics or not to go, and I assume that you're probably right. There are some of these clinics around that she could have gone to. Was there state disability and other avenues for relief that she could have... Well, she had applied for Social Security. As soon as she got the Social Security benefits, she started, and Medicare through that for disability, she started going back to the doctor. I mean, she started treating for her arthritis. But prior to that time, this woman is severely mentally disabled also. So I don't know if that's the reason she didn't go or not. I don't really know. That never went into why she didn't go to some other facility that may have been available. But she could not, and there's case law on this, that you can't fault a person for not going to the doctor when they can't afford to go to the doctor. No, but you can't claim under a contract that requires you to go to the doctor. Well, if the contract, if... Those are the terms and conditions under which she paid her premiums and would get relief in the event of certain causes. Yes, but she also assumed when she paid her premiums that that insurance would be there when she needed it, and it's already... If she went to the doctor, it certainly would have been there, wouldn't it?  At the time we're talking about, 1998, they were refusing to do anything for her, pay her any benefits or anything. And... So are you arguing that their refusal to pay her benefits excuses her from complying with certain conditions of the contract? I'm saying that their refusal to pay her benefits, which was found to be arbitrary and capricious, and that refusal until 2000... I know all that. Okay. I'm talking about contract law. Her receiving the benefits, her going to the doctor was a condition proceeding to her receiving the benefits under contract law. They may, they created an impossible condition for her to be able to go to the doctor to receive the treatment that she would have needed for the arthritis. She had no insurance. She had no, she had no, no funds that she would have received from them had they been, had they rightfully paid her. And that excuses the, the condition proceeding. Did she give notice to the, to the insurance carrier that she was going to claim during this period and that she could not get medical help? Well, when they have denied her benefits, she's under no obligation to give them any notice. There was never a secret. Nobody ever asked her. They never inquired of her whether she was, she was disabled or from a physical cause. She really made no claim for benefits either. Well, she made a claim for benefits. Particular benefits. The policy does not require that you make a specific claim for every cause of disability. She made a claim initially when she first became disabled. The policy provides that if another cause arises during a period where she is disabled and entitled benefits, that new cause is, it doesn't say you have to apply for it again or anything else. That new cause says that she, she, the policy says she's entitled to have continued benefits, even if the old cause goes away and there's just a new cause. I would like to save a few minutes for rebuttal if there's no other questions. All right. Thank you. One of Your Honors, may I please the Court? My name is Brian Weiss, W-E-I-S-S. I'm representing Transgender Life and Casualty Group in this matter. There was, has not been a discussion yet about the appropriate standard of review, and I think that's important perhaps to get away, to get out of the way first so we're all on the same page here. The plaintiff has, I'm sorry, the appellant has admitted that because of the wording of the insurance plan, that the standard of review is an arbitrary and capricious one. In other words, it's not de novo, this Court doesn't substitute its own decision. It's looking at whether or not the decision reached by the plan administrator was an abuse of discretion. And so we're looking at whether or not its decision was arbitrary and capricious, whether or not it made its decision without any explanation, whether or not its decision conflicts with the clear language of the plan, whether or not it focused on clearly erroneous facts and law, and basically whether it was patently arbitrary and unreasonable. And again, the plaintiff, the appellant, has admitted that that is the standard to be applied here by this Court. And his brief suggests a couple of exceptions. I've argued that they don't apply. I don't know if this Court has any issues or questions about the standard of review. My question I have is about the recent action by the California Department of Insurance that found that discretionary clauses in insurance contracts such as this are against public policy and are not enforceable. Well, I don't know that that necessarily applies to federal ERISA plans or not. I haven't studied the law. Okay, so you haven't heard of this. No, that's not been argued. It's been argued before me recently. It has not been argued in either sets of briefs and perhaps can be if correct. Okay. I'm not sure it would make a difference in this case because, well, anyway, go on. Okay, thank you, Your Honor. I am a bit bothered by the linkage between what happened with the claim for the mental benefits as opposed to the physical benefits and the linkage. I agree with the Court that the notion that the claimant has to be under the regular care of a physician at the time of the period of the disability is an express provision in the contract. It has not been attacked by the appellant. There's no argument that it's vague, ambiguous, unenforceable. The only argument that has been made is that the appellant could not be under the care of a physician because of her poverty status, which she is blaming on my client. I believe that that argument is both factually and legally without merit. From a factual standpoint... Does the regular care of a physician have to be for the particular condition for which she is claiming? Because she was under the regular care of a psychologist or psychiatrist. Correct. The initial claim here was for a mental disability. She made a claim for, quote, a disability. So then she, in 96, she is given a claim form in which she is supposed to be describing her disability. And the disability that she describes in that claim form in 96 was clearly and only a mental disability. As we sit here today, she's claiming problems with her hips and her knees and her joints. There was nothing about that in the 1996 claim form. From 1996 until the various stages of litigation that this case took on, we've been talking only about a mental disability case. There was never an argument raised, well, in addition to this mental disability, we also have these other disabilities. When the mental disability claim was finally disposed of and paid, 16 days later, the appellant says, oh, here's some other issues. You know, I have these problems with my hip and my knees. There's no question she has those problems. I mean, doctors later have said she has those problems.  The problem we have, of course, is, you know, those problems would have had to have been in existence in March of 98 when her mental disability benefits ran out in order for her to have continued benefits. And when she brought it to my client's attention that there was these physical ailments as well, then we pursued the course of looking at those issues. We got all of her records. My client spent a better part of a year assembling all of the records, doing the appropriate interviews, et cetera, and could not find anything in any record anywhere to show that she was either, A, disabled in March of 98, or, B, under the regular care of a physician. And that's why we're here today. Back to this poverty issue, a couple things. Factually, it's important to know that the mental disability claim was denied in 97. And so, you know, there's still time for her there to see a doctor. But I think that the most important thing to remember is that this policy is a long-term disability benefits policy. It's not a health policy. It's not a Blue Cross plan. It's not a Health Net plan. It was never there to pay her medical bills to see doctors. I don't know what plan she had for that, if any. But this plan was not a substitute and was not a means for her to pay her medical bills to see doctors. And I would agree with the Court that there was numerous other opportunities and remedies available for her to see a doctor somewhere, somehow, in 1998, if her condition was truly as bad as what she's saying in retrospect it was. So, again, this is just a disability plan. It was not a health plan. The denial of the benefits may have caused her to have less money because she wasn't getting that disability payment. But that's, I would think, a separate and distinct issue from whatever health plan she was or was not on that would have been there to pay medical bills. And I don't think it's a positive result for this Court to reach as a matter of public policy to say, well, if you've been denied a claim for disability benefits and you're ailing physically, that you can not do anything, you don't have to do anything, to mitigate your physical ailments and you don't have to see a doctor and you don't have to make any efforts to visit any medical facilities because three, four, five years down the road, the Court's going to fix all that for you. If she was as poorly physically disabled as she claims to be, one would think that in 1998 she would have gotten herself to a doctor. And there's nothing in the records to indicate that she was that disabled. The appellant has admitted that she was not under the care of a doctor for a physical disability as of March of 98. When all the dust settled, when my client was seeking very hard to find out what evidence there was that she was under a disability physically in 1998, at the end of the day all it got was two one-page reports from doctors that were written five years after 1998 that never saw her anywhere close to 1998 and basically said, based on what we're looking at today in the year 2000, she probably was under some type of ailment in 98. The policy, however, requires more than just was she hurting in 1998? Was she physically ill in 1998? What we're looking at is whether or not the appellant was suffering from a disability and that means that she was physically unable to perform the functions of her job. What was her job? She was a CEO of a data processing company. She had a desk job. She was filling out paperwork, making calls, organizing the office. And even if one accepts the medical reports that were submitted to my client, there's nothing in there that says she was disabled as that term is defined in the plan in 98. All it says, at best, is that she was suffering from some form of arthritis perhaps as far back as 1997, 98, but there's no finding at all anywhere of any disability as that term is defined in the policy. If there's no further questions, I will submit now. Thank you. With regard to whether or not she was disabled in 1998 from the arthritis, there never was a doctor that reviewed the medical records or the records or the notes or the one pages or whatever you want to call them that the plaintiff submitted when she, when the matter was remanded back to the plan. The plan never had anybody review those records. So those records indicate she was disabled in 1998 from the arthritis, and that's uncontradicted. With regard to the public health and her being able to go someplace to find medical help, that was never raised below and that was never discussed. And we don't know what the situation is, whether she could have gone or what, or whether if she had gone they kept a record or whatever. In the end, we know that she needed two hip replacements just a few years after that, and it's – and we know that her condition is a degenerative condition. It doesn't arise overnight. I would like to read to the Court from the opinion of Cook v. Liberty, which is cited in my brief. Liberty argues that there is no evidence of Cook's disability status after October 1998 when it terminated her disability benefits, and hence no basis for awarding her disability benefits past that date. However, the absence of information about Cook's disability status resulted directly from Liberty's arbitrary and capricious termination of her benefits. As a recipient of disability benefits, Cook was under a continuing obligation to deduce proof of her disability pursuant to the long-term disability plan. Once Liberty terminated her benefits, she was no longer obligated to update Liberty on her health status. It would be patently unfair to hold that an ERISA plaintiff has a continuing responsibility to update her former insurance company and the Court on her disability during the pendency of her internal appeals and litigation on the off chance that she might prevail in her lawsuit. Moreover, as the District Court notes in its decision, reconstruction of the evidence of disability during the years of litigation could be difficult for a recipient of long-term disability benefits wrongfully terminated from a plan. My client is exactly in the position of Cook and Cook v. Liberty. And if you look at the case of, and I can't pronounce this, but it's Scredvet v. DuPont, also cited in my briefs, that is a case almost directly on point dealing with the inability to see a doctor because of a lack of funds and how it tends to excuse that requirement of being under the care of a doctor. Also, I cited to the Court the case of Gaylor v. John Hancock in a letter to the Court. And to quote from that, from the Gaylor case, which was also a disability case from the Tenth Circuit, it would indeed be the November 14, 2005. It would indeed be anomalous as well as unjust to deny benefits because the insurer refused to underwrite the visit without which the insured cannot afford to see a doctor, the very reason for obtaining insurance in the first place. And that is my client's position. She was entitled to benefits that were denied her for over five years. When she finally got the benefits, she went to the doctor. She had what was, what she needed to be done was done. She's still going through that whole process right now. Before she got the money that she was entitled to get, she had no funds at all. And she was unable to go to the doctor. And she was in that position because of the arbitrary and capricious denial of benefits. Thank you. Thank you, Ken.
judges: Beezer, Hall, Wardlaw